IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF FLORIDA,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY and U.S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 et seq.** |

## INTRODUCTION

1. The American Civil Liberties Union of Florida ("Plaintiff" or "ACLU") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as amended, to obtain injunctive and other appropriate relief requiring Defendants U.S. Department of Homeland Security ("DHS") and U.S. Customs and Border Protection ("CBP") (collectively, "Defendants") to respond to two FOIA requests sent by Plaintiff on February 2, 2017 (individually, "Request," and collectively, "Requests") and to promptly disclose the requested records.

2. The Requests seek records concerning CBP's local implementation of President Trump's January 27, 2017 Executive Order titled "Protecting the Nation From Foreign Terrorist Entry Into the United States," Exec. Order No. 13769, 82 Fed. Reg. 8977 (Feb. 1, 2017) ("Executive Order No. 1"), as well as any other judicial order or executive directive issued regarding Executive Order No.1, including President Trump's March 6, 2017 Executive Order, identically titled, Exec. Order No. 13780, 82 Fed. Reg. 13209 (Mar. 6, 2017) ("Executive Order No. 2") (collectively, "Executive Orders").

3. Specifically, the first Request seeks records concerning CBP's local implementation of the Executive Orders at sites within the purview of CBP's Miami Field Office, which includes the Miami International Airport and various ports of entry. A true and correct copy of this Request is attached as **Exhibit A**.

1

4.      The second Request seeks records concerning CBP's local implementation of the Executive Orders at sites within the purview of CBP's Tampa Field Office, which includes the Orlando International Airport and various ports of entry. A true and correct copy of this Request is attached as **Exhibit B**.

5.      Among other things, the Executive Orders purport to halt refugee admissions and bar entrants from several predominantly Muslim countries from entering the United States.

6.      Defendants' implementation of the Executive Orders has been the subject of significant public concern, as reflected by mass protests around the country, substantial news coverage, and numerous lawsuits filed following the President's signing of each Executive Order.

7.      Over the weekend of January 27–29, 2017, at least five lawsuits resulted in emergency court orders enjoining implementation of various sections of Executive Order No. 1.[1] On March 15, 2017, a district court enjoined implementation of Sections 2 and 6 of Executive Order No. 2.[2]

8.      News reports described Defendants' implementation of the Executive Orders as "chaotic" and "total[ly] lack[ing] . . . clarity and direction."[3]

9.      Official DHS statements reflected this confusion. For example, DHS stated on January 28 that Executive Order No. 1 would "bar green card holders."[4] The next day, however, DHS Secretary John Kelly deemed "the entry of lawful permanent residents to be in the national interest"[5] and the government clarified that Executive Order No. 1 did *not* apply to green card holders.[6]

---

[1] *Vayeghan v. Kelly*, No. CV 17-0702, 2017 WL 396531 (C.D. Cal. Jan. 29, 2017); *Tootkaboni v. Trump*, No. 17-CV-10154, 2017 WL 386550 (D. Mass. Jan. 29, 2017); *Doe v. Trump*, No. C17-126, 2017 WL 388532 (W.D. Wash. Jan. 28, 2017); *Aziz v. Trump*, No. 1:17-CV-116, 2017 WL 386549 (E.D. Va. Jan. 28, 2017); *Darweesh v. Trump*, No. 17 CIV. 480 (AMD), 2017 WL 388504 (E.D.N.Y. Jan. 28, 2017).
[2] *Hawai'i v. Trump*, No. CV 17-00050 DKW-KSC, 2017 WL 1011673 (D. Haw. Mar. 15, 2017).
[3] *See, e.g.*, Ryan Devereaux et al., *Homeland Security Inspector General Opens Investigation of Muslim Ban, Orders Document Preservation*, THE INTERCEPT, Feb. 1, 2017, *available at* https://theintercept.com/2017/02/01/homeland-security-inspector-general-opens-investigation-of-muslim-ban-rollout-orders-document-preservation/.
[4] *See* Max Greenwood, *Immigration Ban Includes Green Card Holders: DHS*, THE HILL, Jan. 28, 2017, *available at* http://thehill.com/policy/national-security/316670-trump-refugee-ban-bars-green-card-holders-report.
[5] *Statement By Secretary John Kelly On The Entry Of Lawful Permanent Residents Into The United States*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at*

10. Reportedly spurred by this chaos, on January 29, Senators Tammy Duckworth and Dick Durbin called upon the Office of the Inspector General of the Department of Homeland Security to investigate Defendants' implementation of Executive Order No. 1.[7] The Senators specifically sought information regarding: any guidance Defendants provided to the White House in developing the order; any directions that were provided to Defendants in implementing it; whether CBP officers complied with the relevant court orders; and whether DHS and CBP officers kept a list of individuals that they had detained at ports of entry under the order. In response, the Inspector General directed Defendants' personnel to preserve all records "that might reasonably lead to the discovery of relevant information relating the implementation of" Executive Order No. 1.[8]

11. The Miami Field Office oversees five ports of entry including Miami International Airport. Miami International Airport ranks nationally as the second busiest airport for international passengers (21.2 million in 2015), and tenth busiest airport for total passengers (44.4 million in 2015).[9] Globally, it is the twenty-eighth busiest airport for total passengers, and twenty-ninth busiest airport for international passengers.[10]

12. The Tampa Field Office oversees seventeen ports of entry including Orlando International Airport. Orlando International Airport ranks nationally as the fourteenth busiest airport both for total passengers (38.7 million in 2015) and for international passengers (5.5

---

https://www.dhs.gov/news/2017/01/29/statement-secretary-john-kelly-entry-lawful-permanent-residents-united-states.
[6] *See* Robert Mackey, *As Protests Escalate, Trump Retreats From Barring Green Card Holders*, THE INTERCEPT, Jan. 29, 2017, *available at* https://theintercept.com/2017/01/29/trumps-executive-order-no-longer-bars-green-card-holders/.
[7] *See* Ryan Devereaux *et al.*, *Homeland Security Inspector General Opens Investigation of Muslim Ban, Orders Document Preservation*, THE INTERCEPT, Feb. 1, 2017, *available at* https://theintercept.com/2017/02/01/homeland-security-inspector-general-opens-investigation-of-muslim-ban-rollout-orders-document-preservation/.
[8] *Id.*
[9] *Miami International Airport: U.S. and Worldwide Airport Rankings*, MIAMI-DADE AVIATION DEP'T (Sep. 29, 2016), *available at* http://www.miami-airport.com/pdfdoc/2015_Rankings-US_and_Worldwide_(Final).pdf.
[10] *Id.*

million in 2015),[11] with year-round direct flights to and from a large number of cities abroad, including Dubai, in the United Arab Emirates.[12]

13. Disclosure of the records Plaintiff seeks through this action would facilitate the public's understanding of how Defendants implemented and enforced the Executive Orders in the Miami Field Office, including at Miami International Airport in particular, and in the Tampa Field Office, including at the Orlando International Airport in particular. Such information is critical to the public's ability to hold the government accountable.

14. This action is necessary because Defendants have failed to provide Plaintiff with a determination as to whether they will comply with the Requests, although more than 20 business days have elapsed since Defendants received the Requests.

**JURISDICTION**

15. This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 701–706, and 28 U.S.C. § 1331.

**VENUE**

16. Venue in the United States District Court for the Southern District of Florida is proper under 5 U.S.C. § 552(a)(4)(B) as at least some of the requested agency records are, upon information and belief, situated at CBP facilities within this district, and because Plaintiff ACLU of Florida's principal place of business is in the Southern District. For the same reasons, venue also is proper under 28 U.S.C. § 1391(e).

**PARTIES**

17. Plaintiff is a non-profit, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby its legislators.

18. Defendant Department of Homeland Security is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

---

[11] *Id.*
[12] *International Service*, GREATER ORLANDO AVIATION AUTHORITY (April 10, 2017), *available at* https://www.orlandoairports.net/flights/international-service/.

4

19. Defendant U.S. Customs and Border Protection is a component of DHS and is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

20. Plaintiff is informed and therefore believes that Defendants have possession, custody, or control of the requested records.

## FACTS

21. On February 2, 2017, Plaintiff sent the Requests to CBP's Miami Field Office and Tampa Field Office, as well as to CBP's FOIA Officer at CBP Headquarters, via United States Postal Service Priority mail, with tracking numbers 9505 5122 3416 7033 0679 15, 9505 5122 3416 7033 0679 22, and 9505 5122 3416 7033 0679 08, respectively. *See* **Exhibit C**.

22. The Requests sought copies of CBP's local interpretation and enforcement of the Executive Order at: 1) certain airports specified in the Requests, including Miami International Airport and Orlando International Airport ("Local International Airports"); and 2) certain Port of Entry offices specified in the Requests, including the Port of Entry Office corresponding to Miami International Airport and the Port of Entry Office corresponding to Orlando International Airport ("Port of Entry Offices"). The Requests expressly did *not* seek information held in the records of CBP Headquarters.

23. Specifically, each Request sought the following:

1. "Records created on or after January 27, 2017 concerning CBP's interpretation, enforcement, and implementation of the following at Local International Airport:
   a. President Trump's Executive Order, signed on January 27, 2017 and titled 'Protecting the Nation From Foreign Terrorist Entry Into the United States';
   b. Any guidance 'provided to DHS field personnel shortly' after President Trump signed the Executive Order, as referenced in CBP's online FAQ;[13]

---

[13] To assist CBP in responding, the Request included the following information in a footnote for reference: "*Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. CUSTOMS AND BORDER PROTECTION (Jan. 31, 2017), *available at* https://www.cbp.gov/border-security/protecting-nation-foreign-terrorist-entry-united-states ('The Executive Order and the instructions therein were effective at the time of the order's signing. *Guidance was provided to DHS field personnel shortly thereafter*.') (emphasis added)."

5

    c.    Associate Director of Field Operations for U.S. Citizenship and Immigration Services Daniel M. Renaud's email, sent at 11:12 A.M. on January 27, 2017, instructing DHS employees that they could not adjudicate any immigration claims from the seven targeted countries;[14]

    d.    Judge Donnelly's Decision and Order granting an Emergency Motion for Stay of Removal, issued in the Eastern District of New York on January 28, 2017, including records related to CBP's efforts to comply with the court's oral order requiring prompt production of a list of all class members detained by CBP;[15]

    e.    Judge Brinkema's Temporary Restraining Order, issued in the Eastern District of Virginia on January 28, 2017;[16]

    f.    Judge Zilly's Order Granting Emergency Motion for Stay of Removal, issued in the Western District of Washington on January 28, 2017;[17]

    g.    Judge Burroughs' Temporary Restraining Order, issued in the District of Massachusetts on January 29, 2017;[18]

    h.    Judge Gee's Order granting an Amended *Ex Parte* Application for Temporary Restraining Order, issued in the Central District of California on January 29, 2017;[19]

---

[14] The following footnote was included for reference: "*See* Alice Speri and Ryan Devereaux, *Turmoil at DHS and State Department—'There Are People Literally Crying in the Office Here,'* THE INTERCEPT, Jan. 30, 2017, *available at* https://theintercept.com/2017/01/30/asylum-officials-and-state-department-in-turmoil-there-are-people-literally-crying-in-the-office-here/."

[15] The following footnote was included for reference: "Decision and Order, *Darweesh v. Trump*, No. 17 Civ. 480 (AMD) (E.D.N.Y. Jan. 28, 2017), *available at* https://www.aclu.org/legal-document/darweesh-v-trump-decision-and-order."

[16] The following footnote was included for reference: "Temporary Restraining Order, *Aziz v. Trump*, No. 1:17-cv-116 (E.D. Va. Jan. 28, 2017), *available* at https://www.justice4all.org/wp-content/uploads/2017/01/TRO-order-signed.pdf."

[17] The following footnote was included for reference: "Order Granting Emergency Motion for Stay of Removal, *Doe v. Trump*, No. C17-126 (W.D. Wash. Jan. 28, 2017), *available at* https://www.justsecurity.org/wpcontent/uploads/2017/01/Seattle-Order.pdf."

[18] The following footnote was included for reference: "Temporary Restraining Order, *Tootkaboni v. Trump*, No. 17-cv-10154 (D. Mass. Jan. 29, 2017), *available at* https://aclum.org/wp-content/uploads/2017/01/6-TRO-Jan-29-2017.pdf."

[19] The following footnote was included for reference: "Order, *Vayeghan v. Trump*, No. CV 17-

i. Assurances from the U.S. Attorney's Office for the Eastern District of Pennsylvania that all individuals detained at Philadelphia International Airport under the Executive Order would be admitted to the United States and released from custody on Sunday, January 29, 2017;

j. DHS's 'Response to Recent Litigation' statement, issued on January 29, 2017;[20]

k. DHS Secretary John Kelly's 'Statement on the Entry of Lawful Permanent Residents Into the United States,' issued on January 29, 2017;[21]

l. DHS's 'Statement on Compliance with Court Orders and the President's Executive Order,' issued on January 29, 2017;[22] and

m. Any other judicial order or executive directive issued regarding the Executive Order on or after January 27, 2017.

2. Records concerning the number of individuals who were detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at Local International Airport pursuant to the Executive Order, including:

a. The total number of individuals who remain detained or subject to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at Local International Airport both as of the

---

0702 (C.D. Cal. Jan. 29, 2017), *available at* https://www.aclusocal.org/sites/default/files/vayeghan_-_order_re_tro.pdf."

[20] The following footnote was included for reference: "*Department of Homeland Security Response to Recent Litigation*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/department-homeland-security-response-recent-litigation."

[21] *Statement By Secretary John Kelly On The Entry Of Lawful Permanent Residents Into The United States,* DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/statement-secretary-john-kelly-entry-lawful-permanent-residents-united-states.

[22] The following footnote was included for reference: "*DHS Statement On Compliance With Court Orders And The President's Executive Order*, DEP'T OF HOMELAND SECURITY (Jan. 29, 2017), *available at* https://www.dhs.gov/news/2017/01/29/dhs-statement-compliance-court-orders-and-presidents-executive-order."

7

       date of this request and as of the date on which this request is processed; and

   b. The total number of individuals who have been detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver for any length of time at Local International Airport since January 27, 2017, including the number of individuals who have been

    i. released,

    ii. transferred into immigration detention, or

    iii. removed from the United States;

3. Records concerning the number of individuals who have been removed from Local International Airport from January 27, 2017 to date pursuant to the Executive Order;

4. Records concerning the number of individuals who arrived at Local International Airport from January 27, 2017 to date with valid visas or green cards who subsequently agreed voluntarily to return; and

5. Records containing the 'guidance' that was 'provided to DHS field personnel shortly' after President Trump signed the Executive Order."[23]

Exh. A at 6-9; Exh. B at 6-9.

24. Each Request included an application for expedited processing, on the grounds that there is a "compelling need" for these records under 5 U.S.C. § 552(a)(6)(E)(v)(II) because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." Exh. A at 13; Exh. B at 13.

---

[23] The following footnote was included for reference: "*Protecting the Nation from Foreign Terrorist Entry into the United States*, U.S. CUSTOMS AND BORDER PROTECTION (Jan. 31, 2017), *available at* https://www.cbp.gov/border-security/protecting-nation-foreign-terrorist-entry-united-states ('The Executive Order and the instructions therein were effective at the time of the order's signing. *Guidance was provided to DHS field personnel shortly thereafter.*') (emphasis added)."

8

25. Each Request provided detail showing that the ACLU is primarily engaged in disseminating information within the meaning of 5 U.S.C. § 552(a)(6)(E)(v), given that a critical and substantial aspect of the ACLU's mission is to obtain information about government activity, analyze that information, and publish and disseminate that information widely to the press and public. Exh. A at 11-13; Exh. B at 11-13.

26. Each Request described examples of the ACLU's information-dissemination function. Exh. A at 11-13; Exh. B at 11-13.

27. Each Request also included an application for a fee waiver or limitation under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." In particular, the ACLU emphasized that the Requests would significantly contribute to public understanding on a matter of profound public importance about which scant specific information had been made public, *i.e.*, how local CBP Field Offices had enforced, and continue to enforce, the Executive Orders. Each Request also made clear that the ACLU plans to disseminate the information disclosed as a result of the Request to the public at no cost. Exh. A at 14; Exh. B at 14.

28. Each Request also applied for a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) on the grounds that Plaintiff qualifies as "representatives of the news media" and the records are not sought for commercial use, given the ACLU's non-profit mission and substantial activities to publish information for dissemination to the public, as discussed in greater detail in ¶ 25 above. Exh. A at 14-15; Exh. B at 14-15.

29. CBP's Miami Field Office received the Request addressed to it on February 6, 2017. *See* **Exhibit D**.

30. CBP's Tampa Field Office received the Request addressed to it on February 6, 2017. *See* **Exhibit E**.

31. CBP's FOIA Officer at CBP Headquarters received the Request addressed to it on February 6, 2017. *See* **Exhibit F.**

9

32. On February 10, 2017, CBP acknowledged via email its receipt of the Request delivered to the Miami Field Office. A true and correct copy of CBP's acknowledgement of receipt is attached as **Exhibit G**.

33. In its acknowledgement of receipt, CBP indicated that the Request was assigned a tracking number (CBP-2017-030015). However, CBP did not provide a determination as to whether, or when, CBP would comply with the Request. *See* Exh. F.

34. On the same date (February 10, 2017), CBP notified Plaintiff that the Request delivered to the Miami Field Office had its tracking number changed from CBP-2017-030015 to CBP-OFO-2017-030015, which, the letter explained, "is normally due to the request being transferred to another agency (for example, EPA to Dept. of Commerce) or to a sub-agency to process it." *See* **Exhibit H**.

35. On February 22, 2017, CBP acknowledged via email its receipt of the Request delivered to the Tampa Field Office. A true and correct copy of CBP's acknowledgement of receipt is attached as **Exhibit I**.

36. In its acknowledgement of receipt, CBP indicated that the Request was assigned a tracking number (CBP-2017-033092). However, CBP did not provide a determination as to whether, or when, CBP would comply with the Request. *See* Exh. H.

37. On March 08, 2017, CBP notified Plaintiff that the Request delivered to the Miami Field Office, whose tracking number had been changed from CBP-2017-030015 to CBP-OFO-2017-030015, would be changed again back to CBP-2017-030015, once again explaining that this "is normally due to the request being transferred to another agency (for example, EPA to Dept. of Commerce) or to a sub-agency to process it." *See* **Exhibit J**.

38. As of April 12, 2017 (the filing date of this Complaint), Plaintiff has not received any notification of any change made to the tracking number for the Request delivered to the Tampa Field Office.

39. As of the filing date of this Complaint, more than 20 days (excepting Saturdays, Sundays, and legal public holidays) have elapsed since CBP received the Requests.

40. As of the filing date of this Complaint, Defendants have not notified Plaintiff of a determination as to whether Defendants will comply with the Requests.

41. Because Defendants failed to comply with the 20-business-day time limit provision of FOIA, 5 U.S.C. § 552(a)(6)(A)(i), Plaintiff is deemed to have exhausted their administrative remedies with respect to the Requests under 5 U.S.C. § 552(a)(6)(C)(i).

**Violation of FOIA for Failure
to Provide a Determination
Within 20 Business Days**

42. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 41 above, inclusive.

43. Defendants have a legal duty under FOIA to determine whether to comply with a request within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receiving the Requests, and also have a legal duty to immediately notify a requester of the agency's determination and the reasons therefor.

44. Defendants' failure to determine whether to comply with the Requests within 20 business days after receiving them violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and applicable regulations promulgated thereunder.

**Violation of FOIA for Failure
to Make Records Available**

45. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 41 above, inclusive.

46. Plaintiff has a legal right under FOIA to obtain the specific agency records requested on February 2, 2017, and there exists no legal basis for Defendants' failure to promptly make the requested records available to Plaintiff, its members, and the public.

47. Defendants' failure to promptly make available the records sought by the Requests violates FOIA, 5 U.S.C. § 552(a)(3)(A), and applicable regulations promulgated thereunder.

48. On information and belief, Defendants currently have possession, custody or control of the requested records.

**Violation of FOIA for Failure to
Provide a Determination As To
Expedited Processing Within 10 Days**

49. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 41 above, inclusive.

50. Defendants have a legal duty under FOIA to determine whether to provide expedited processing, and to provide notice of that determination to Plaintiff, within 10 days after the date of the Requests.

51. Defendants' failure to determine whether to provide expedited processing and to provide notice of that determination to Plaintiff within 10 days after the date of the Requests violates FOIA, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and applicable regulations promulgated thereunder.

52. Because Defendants have not provided a complete response to the Requests, this Court has jurisdiction under FOIA, 5 U.S.C. § 552(a)(6)(E)(iv) to review Defendants' failure to make a determination concerning Plaintiff's Requests for expedited processing.

**WHEREFORE**, Plaintiff requests that the Court award it the following relief:

1. Declare that Defendants violated FOIA by failing to determine whether to comply with the Requests within 20 business days and by failing to immediately thereafter notify Plaintiff of such determination and the reasons therefor;

2. Declare that Defendants violated FOIA by unlawfully withholding the requested records;

3. Declare that Defendants violated FOIA by failing to determine whether to provide expedited processing, and to provide notice of that determination to Plaintiff, within 10 days;

4. Order Defendants to immediately disclose the requested records to the public and make copies immediately available to Plaintiff without charge for any search or duplication fees, or, in the alternative, provide for expedited proceedings to adjudicate Plaintiff's rights under FOIA;

5. Award Plaintiff its reasonable costs and attorneys' fees; and

6. Grant such other relief as the Court may deem just and proper.

DATED this 12th day of April, 2017.

Respectfully submitted,

By: */s/ Andrea Flynn Mogensen*
ANDREA FLYNN MOGENSEN, Esq.

Law Office of Andrea Flynn Mogensen, P.A.
200 South Washington Boulevard, Suite 7
Sarasota FL 34236
Telephone: 941.955.1066
Fax: 941.955.1008
Florida Bar No. 0549681
amogensen@sunshinelitigation.com
mbarfield@sunshinelitigation.com


BRIAN LEE TANNEBAUM, Esq.
1 SE 3rd Avenue, Suite 1400
Miami, FL 33131-1708
Telephone: (305) 374-7850
Fax: (305) 374-0081
Florida Bar No. 47880
btannebaum@tannebaum.com


NANCY G. ABUDU, Esq.
Legal Director
ACLU of Florida, Inc.
4500 Biscayne Blvd.
Miami, FL 33137-3254
(786) 363-2700
Florida Bar No. 111881
nabudu@aclufl.org

Benjamin Stevenson
ACLU of Fla.
3 W. Garden St., Ste. 712
Pensacola, FL 32502
786.363.2738
bstevenson@aclufl.org

Attorneys for Plaintiff

AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC.